IN THE UNITED STATES DISTRICT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JEREMY PITTMAN, PEREZ SLAY,                                         PLAINTIFFS
and MICHAEL FRANKLIN,

VS.                                                                 CIVIL ACTION NO. 2:23-cv-166-HSO-BWR

GEORGIA PACIFIC, LLC                                                DEFENDANT.

## COMPLAINT

The Plaintiffs Jeremy Pittman ("Pittman"), Perez Slay ("Slay") and Michael Franklin ("Franklin")( collectively "Plaintiffs") complain against the Defendant Georgia Pacific, LLC as follows:

### JURISDICTION & VENUE

1.  The Court has jurisdiction of this case pursuant to 42 U.S.C. § 2000e-5, 42 U.S.C. § 1981 and 28 U.S.C. § 1331.

2.  The Defendant owns and operates a paper mill in Lawrence County, MS. The alleged conduct that gave rise to this complaint occurred in Lawrence County, MS and thus within this judicial district.

### FACTS

3.  The Plaintiffs are African American men formerly employed with the Defendant at its Monticello MS paper mill (hereinafter "Monticello Mill"). The Monticello Mill produces liner board. The Defendant terminated the Plaintiffs' employment effective September 28, 2021.

4.  Generally speaking, the Monticello Mill is divided into several departments. The production side of the mill includes the paper machine department, the pulp mill department,

finishing and shipping department, utilities department ("Powerhouse"), the woodyard department and the technical department. There is also a maintenance department at the Monticello Mill.

5.      Immediately prior to their terminations, the Plaintiffs worked in a job classification known as "oiler."  Defendant employed six oilers at Monticello Mill.  Five of the six oilers were African American.  The oiler position worked out of the maintenance department though it was not considered a maintenance mechanic/technician position.

6.      In early 2021, the Defendant informed the Plaintiffs that it planned on assigning the duties of the oiler position to a maintenance mechanic/technician. Because the Plaintiffs were not qualified as maintenance mechanics/technicians, they would have to revert to their former positions in production and in the case of Pittman (who was hired as an oiler), assigned to the entry level general labor pool.

7.      Plaintiffs complained that maintenance management was denying them the opportunity to work in the maintenance department because of their race.  Plaintiffs complained that the decision to eliminate the oiler position and assign its duties to a maintenance mechanic/technician was racially motivated.  Unlike the production departments, the maintenance department was and continues to be overwhelming Caucasian ("white").  Plaintiffs called the Defendant's complaint hotline to register their complaints of race discrimination.

8.      Plaintiffs also informed their Union representative who protested Defendants' decision to reassign Plaintiffs without giving them the opportunity to qualify as entry level maintenance mechanics/technicians.  Though the Defendant did not change its unlawfully motivated decision to eliminate the "oiler" position, it provided Plaintiffs an opportunity to qualify as maintenance mechanics by taking the maintenance aptitude test.

9. In late June or early July 2021, the Plaintiffs each took and passed the maintenance aptitude test.

10. In a departure from its past practice of training new maintenance mechanics/technicians, the Defendant did not immediately assign Plaintiffs to train full time as maintenance mechanics. Instead, Plaintiffs continued performing the duties of the oiler position and Defendant only allowed them to train on a part time basis.

11. The Defendant also refused to provide the Plaintiffs with tools needed to train as maintenance mechanics/technicians. The Plaintiffs complained that they did not receive tools. Plaintiffs spoke to Darryl Burris (a maintenance manager) and Mr. Burris admitted that he was told not to order tools for the Plaintiffs.

12. Plaintiffs also complained about a pay disparity. Mr. Pittman called the ethics hotline and complained that the Defendant was paying the black employees who had just qualified as maintenance mechanics less that white employees who had recently qualified as maintenance mechanics. Specifically, Mr. Pittman stated that newly hired white maintenance mechanics were paid at step 2 but that he and the other Plaintiffs were paid at step 1.

13. A couple weeks after complaining, sometime in late August or early September 2021, the Defendants stopped allowing the Plaintiffs to train as maintenance mechanics/technicians.

14. After the Plaintiffs' complained about what they reasonably believed was racial discrimination in training, provision of tools and pay, the Defendants launched an investigation into the job performance of each of the Plaintiffs. The Defendants questioned the Plaintiffs about alleged missing sample data.

15. On September 28, 2021, the Defendants terminated the Plaintiffs employment. The Defendants falsely accused the Plaintiffs of misconduct.

16. After being terminated, the Plaintiffs applied for unemployment benefits. The Defendant challenged the Plaintiffs' application for unemployment benefits. The Defendant, however, did not challenge the unemployment benefit application of a white co-worker terminated for the same alleged misconduct.

## COUNT I

## (Race discrimination – Section 1981)

15. The Defendant eliminated the oiler position and transferred the duties of the position to white maintenance workers. The Defendant undertook this action because of Plaintiffs' race.

16. The Defendant limited the Plaintiffs' training as maintenance mechanics/technicians because their race. White employees who passed the maintenance aptitude test were allowed to immediately train on a full-time basis. White trainees were also provided with tools needed to train on the job. The Plaintiffs were not provided the same training opportunities and necessary tools even though they passed the maintenance aptitude test.

17. The Defendant also paid the Plaintiffs less than newly hired white maintenance mechanics were paid.

18. After learning that the Plaintiffs had passed the aptitude test, the Defendant's former maintenance superintendent remarked that he couldn't believe unskilled craftsman were coming into the department to do maintenance work. At the time this remark was made, the maintenance department had approximately 50 employees. Only two maintenance mechanics were black.

19. To prevent the Plaintiffs from working as maintenance mechanics, the Defendant launched an investigation into the Plaintiffs' job performance as "oilers" within a month of the Plaintiffs qualifying as maintenance mechanics. The Defendant used an equipment failure that did not involve the Plaintiffs as pretext for auditing their job performance. Prior to Plaintiffs qualifying as maintenance mechanics, the Defendant had never "audited" their job performance.

20. The Defendant terminated Plaintiffs employment on September 28, 2021 on the pretext that they falsified company records because test results from a third-party lab were missing. The Plaintiffs, however, were not responsible for obtaining test results. The Plaintiffs were not sent test results and did not see the results once they collected an oil sample and left it in the shipping department.

21. The Defendant did not adequately investigate why tests results were allegedly missing. The Defendant failed to conduct such investigation because it wanted to prevent the Plaintiffs from working as maintenance mechanics. Indeed, the Defendant resisted the Plaintiffs initial request to take the maintenance aptitude tests and only after the Union challenged this decision, did the Defendant acquiesce and permit the Plaintiffs to take the aptitude test. The Defendant has not subjected white employees who requested to take the aptitude test to the same resistance and opposition.

22. Plaintiffs' race was the "but-for" cause of the Defendant's decisions to, among other things, (i) eliminate the oiler position and reduce the number of blacks in the maintenance department, (ii) deprive Plaintiffs of equal training opportunities; (iii) deprive Plaintiffs of necessary tools; (iv) pay Plaintiffs less than entry-level white maintenance mechanics; (v) investigate/audit the Plaintiffs' job performance and/or (vi) terminate Plaintiffs' employment.

23. Defendant's conduct violated 42 U.S.C. § 1981 as amended by the Civil Rights Act of 1991.

## COUNT II

### (Race Discrimination – Title VII)

24. The Plaintiffs Jeremy Pittman and Perez Slay timely filed charges with the Equal Employment Opportunity Commission challenging the adverse employment actions identified in paragraphs 15-21. Both Plaintiffs received a notice of right to sue on or about August 10, 2023.

25. Plaintiffs' race was a motivating factor in the Defendant's decisions to, among other things, (i) eliminate the oiler position and reduce the number of blacks in the maintenance department, (ii) deprive Plaintiffs of equal training opportunities; (iii) deprive Plaintiffs of necessary tools; (iv) pay Plaintiffs less than entry-level white maintenance mechanics; (v) investigate/audit the Plaintiffs' job performance and/or (vi) terminate Plaintiffs' employment.

26. Defendant's conduct violated 42 U.S.C. § 2000e-2 as amended by the Civil Rights Act of 1991.

## COUNT III

### (Title VII and Section 1981 Retaliation)

27. When the Plaintiffs learned that the Defendant was eliminating the oiler position and removing them from the maintenance department, they complained that the decision was racially discriminatory.

28. Plaintiffs also complained that the Defendant was not providing them with the same training, pay and tools that white employees received when they qualified as maintenance mechanics and that they were still required to perform all the duties of the "oiler" position.

29. The Plaintiffs each called the Defendant's ethics hot-line to register these complaints.

30. Within a month after complaining about discriminatory treatment, the Plaintiffs learned that they were being investigated for allegedly falsifying company documents related to their job performance. Prior to this investigation, Plaintiffs had not received complaints, counseling or warnings from their supervisors regarding their job performance.

31. Plaintiffs received notification that from the Defendant on September 24, 2021 that an internal investigation found no race discrimination. On September 27, 2023, the Plaintiffs were informed that effective September 28, 2023, their employment was the Defendant was terminated.

32 The Defendant initiated an investigation and then terminated the Plaintiffs on pretextual grounds because of their complaints of race discrimination.

33. The Defendant's conduct violated 42 U.S.C. § 2000e-3 (as amended) and 42 U.S.C. § 1981 (as amended).

**PRAYER FOR RELIEF**

34. The Plaintiffs respectfully request that the Court grant the following relief:

(a) reinstatement to their position as maintenance mechanics at the appropriate step level;

(b) order Defendant to pay backpay, the loss of benefits and/or other make whole relief;

(c) order Defendant to pay compensatory and/or punitive damages;

(d) order Defendant to pay reasonable attorney fees and costs (including expert witness fees) of litigation;

(e) and such other legal, equitable or injunctive relief the Court deems appropriate to fully remedy all violations proven at trial.

## JURY TRIAL DEMAND

The Plaintiffs demand a trial by jury on all claims.

<u>/s/ *Joel Dillard*</u>

Joel Dillard & Associates
 775 N Congress St
Jackson, MS 39202
(601) 509-1372